IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CINTHIA H. FIGUEROA-IBARRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-23 (LMB/JFA) |
| ) | |
| KEVIN B. RENNICK, Director, United States ) | |
| Army Garrison, Fort Belvoir, Virginia, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

On June 3, 2019, pro se plaintiff Cynthia H. Figueroa-Ibarry ("plaintiff" or "Figueroa"), filed the pending complaint against her former supervisor Kevin B. Rennick ("defendant" or "Rennick")[1], who was the Director of the United Sates Army Garrison at Fort Belvoir, Virginia, and the Secretary of the Department of the Army, who at the time the complaint was filed was Mark T. Esper but who is now Acting Secretary John E. Whitley,[2] (collectively, "defendants") alleging that defendants discriminated against her and created a hostile work environment on the basis of her gender, race, national origin, and disability and also retaliated against her for having engaged in protected activity. Complaint [Dkt. No. 1] ¶ III(4). Plaintiff seeks compensatory and punitive damages for mental anguish, embarrassment, damage to her reputation, back pay, and

---

[1] Title VII provides that where a plaintiff's complaint is based on federal employment, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). As plaintiff was employed by the Department of the Army, the Secretary of the Army—as the head of the department—is the only proper defendant. Accordingly, Rennick is not a proper defendant and will be dismissed from this civil action for that reason.

[2] Pursuant to Fed. R. Civ. P. 25(d), Acting Secretary Whitley has been automatically substituted as the defendant.

even though she is proceeding pro se, her attorney's fees and costs. She also requests that "harsher punishment" be imposed on Rennick. Id. at 7.

Defendants have filed a Motion to Dismiss in which they argue that both procedural and substantive deficiencies in the complaint require dismissal with prejudice. Specifically, they argue that, with the exception of her retaliation claim, none of plaintiff's discrimination or hostile environment claims were raised in the complaint she filed with the Department of the Army's Equal Employment Opportunity Office ("EEO"), and for that reason were not properly exhausted. [Dkt. No. 19] at 6–8. As for the retaliation claim, they argue that it was not timely raised and is therefore time-barred. Id. They also argue that even if plaintiff had timely exhausted the administrative requirements, substantively the complaint would have to be dismissed because it consists of nothing more than conclusory statements, which fail to meet the pleading requirements mandated under Ashcraft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") [Dkt. No. 19] at 5.

After she responded to the Motion to Dismiss, plaintiff filed in one document what amounts to three different motions: (1) a motion to file an additional opposition to the Motion to Dismiss ("Additional Opposition") [Dkt. No. 26]; (2) a motion to amend her complaint by adding claims for "PTSD, Discrimination, Retaliation, Age, Sex, Disability under ADA, Title 1, Title VII, Alienation, Prior EEO Activities, National Origin, Protected Liberty Interest in My Reputation, Stigma Plus Theory, and ADEA" ("Motion to Amend") [Dkt. No. 27]; and (3) a motion for "additional time to find attorney representation" ("Motion for Additional Time") [Dkt. No. 28]. Defendants have opposed these additional motions. [Dkt. No. 30]. On January 19, 2021, plaintiff filed again in one document what amounts to two motions: a "Motion [sic]

Clarification of Dockets and Evidence as Part of Discovery" and a "Motion Requesting Court Order to Defendants [requiring them to] Respond to 25 Questions of [sic] Docket 31." [Dkt. No. 37]. Defendants have not responded to this motion; however, most of plaintiff's motion either repeats former requests (such as that her complaint should not be dismissed and that she qualifies for court-appointed counsel) or asks for relief (discovery) to which she is not entitled at this time due to the pendency of defendant's Motion to Dismiss. For these reasons, this motion will be denied without the need for a response from defendants, and, for the reasons explained below, defendants' Motion to Dismiss will be granted, all of plaintiff's other pending motions will be denied, and this civil action will be dismissed.

## I. BACKGROUND

Plaintiff filed her complaint on June 3, 2019, in the United States District Court for the District of Puerto Rico.[3] She attached to her complaint an appeal brief dated May 10, 2018, in which an attorney, who was representing her in the administrative proceedings before the Army's EEO Office and the Equal Employment Opportunity Commission Office of Federal Operations ("EEOC"), contested the dismissal of her claim by the Army's EEO Office [Dkt. No. 1-6]; a Request for Reconsideration dated September 11, 2018 filed by the same attorney [Dkt. No. 1-4] and the March 5, 2019 EEOC decision denying reconsideration [Dkt. No. 1-5]. Although the complaint did not attach either plaintiff's initial EEO Counselor Report or plaintiff's formal Complaint of Discrimination filed with the EEO Office, both documents were attached to defendants' Reply Brief. [Dkt. Nos. 25-1 and 25-2]. The Court has considered all these attachments in resolving the pending Motion to Dismiss.

---

[3] Plaintiff moved to Puerto Rico after her employment at Fort Belvoir ended; however, because all of the relevant events occurred in this district, on January 8, 2020, defendants' Motion to Change Venue was granted and this civil action was transferred to this district. [Dkt. No. 12].

3

A court may consider documents attached to a complaint and those which are central to a plaintiff's claim without having to convert a motion to dismiss to one for summary judgment. Gasner v. County of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995); see also Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) (per curiam) ("Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. However, there are exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.") (internal citations omitted); Pueschel v. United States, 369 F.3d 345, 353, n.3 (4th Circ. 2014) ("Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion. Rule 12(b)(6) only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the non-moving party's pleadings . . ."). In resolving the Motion to Dismiss, the Court will refer to the documents that have been attached to the complaint and the motions. As neither party has disputed the documents' authenticity or relevance to the issues raised in the Motion to Dismiss, these attachments have been considered, and have helped make the background facts much clearer because the complaint standing alone was not sufficiently clear. These documents establish the following background facts.

When plaintiff was pursuing the relevant claims with the Army's EEO Office and the EEOC, she was a "47 year old, Hispanic, Puerto Rican female," who suffered from "chronic and persistent anxiety attacks, and post-traumatic stress disorder . . . depression, anxiety, neuropathy

in her arms, legs and feet, nine (9) bulged discs, degenerative disc disorder, tendonitis, bursitis, osteoarthritis, graves' disease, thyroid eye disease, sleep apnea and pre-cancerous colon polyps." [Dkt. No. 1-6] at 2. She had been employed with the Army for 15 years, and in 2016 she was a Staff Action Officer, GS-12 in the Department of the Army's Directorate of Human Services stationed at Fort Belvoir, Virginia. [Dkt. No. 1-5] at 1. Plaintiff had filed previous EEO complaints in 2012 and 2016. In May 2016, plaintiff signed a Negotiated Settlement Agreement in which the Department of the Army agreed to support her request for medical retirement by endorsing the request "once it is prepared by" plaintiff and by forwarding its endorsement of support to the Army Benefits Center - Civilian for processing. [Dkt. No. 30-1] ¶ 3. In that agreement, plaintiff acknowledged that there was no guarantee that her medical retirement application would be accepted or approved. Id. In exchange for that support, plaintiff withdrew her EEO complaint with prejudice and agreed to follow through with all the paperwork required for a medical retirement. Id. ¶ 4. The agreement stated that if plaintiff believed the settlement agreement was violated, she was required to report the non-compliance "within 30 calendar days of when she knew or should have known of the alleged non-compliance." Id. ¶ 8 (emphasis in original). On May 18, 2016. plaintiff initialed each of the three pages of this agreement and signed it on the last page. Id.

On April 15, 2016, plaintiff requested 224 hours of emergency sick leave from May 2, 2016 to June 8, 2016. [Dkt. No. 1-4] at 5. Rennick approved that request. Id. During that time period, as discussed above, plaintiff settled her then pending EEO complaint and also moved to Puerto Rico. See id. Following up on her settlement agreement, plaintiff applied for disability retirement on May 23, 2016. Id. On July 1, 2016, plaintiff submitted a leave request under the Family and Medical Leave Act (FMLA), and her request was granted on July 11, 2016. Id. Her

5

leave without pay (LWOP) status was extended on April 14, 2017 to October 13, 2017. Id. On September 6, 2017, plaintiff sent Rennick an email requesting that her LWOP status be extended an additional six months "due to the category five (5) hurricane" heading toward Puerto Rico. [Dkt. No. 25-2]. There is nothing in this record indicating that Rennick did not approve that request. At some point after plaintiff went on LWOP status, Rennick awarded her a $600 performance award for the last period she worked in 2016. The date of the award is not in the record; however, the EEO investigation includes a statement by Rennick that he advised plaintiff on March 5, 2017 that she had been awarded the $600 [Dkt. No. 25-1] at 4, while plaintiff seems to claim that she first became aware of the award around November 28, 2017 when she emailed Rennick that "he could not give her a performance award with a monetary amount that would be processed through DFAS because that would change the effective date of her separation, and negatively impact the amount of her disability retirement annuity benefits." [Dkt. No. 25-2] at 4–5.

On January 26, 2018, plaintiff made her first contact with an EEO counselor, identified as Major Bryant, to complain about receiving the award. [Dkt. No. 25-2] at 2.[4] On February 14, 2018, plaintiff was advised that the Office of Personnel Management ("OPM") had approved her request for disability retirement, with back pay starting October 2016. [Dkt. No. 1-4] at 2. On February 15, 2018, an attorney representing plaintiff wrote to the EEO director advising that plaintiff anticipated

> filing a complaint of discrimination where she will allege that she has been subject to reprisal for her prior EEO activity when she discovered that Mr. Rennick's submission of

---

[4] The EEO Counselor's Report lists February 19, 2018 as the date of initial contact, while the Formal Complaint of Discrimination, which appears to have been filled out by plaintiff, lists January 26, 2018 as the date of initial contact with an EEO official. [Dkt. Nos. 25-1 and 25-2]. Giving plaintiff the benefit of the doubt, the Court will assume that the earlier January 26, 2018 date is the correct date.

6

> her performance bonus to Defense Finance and Accounting Services ("DFAS") in March of 2017 would affect her date of separation from Federal government. Ms. Figueroa avers that Mr. Rennick retaliated against her when he submitted her performance appraisal bonus to DFAS which negatively affected her back-pay determination. This is important because Ms. Figueroa anticipates receiving retroactive, disability retirement annuity benefits beginning on her date of separation and continuing ongoing in monthly payments.

[Dkt. No. 25-2] at 3. Plaintiff's counsel admitted that the award of a performance bonus was not "a traditional personnel or adverse action" but that under the circumstances it should be considered adverse because of its potential impact on plaintiff's disability benefits. Id. at 3. The remedy sought was "back pay differential" and recovery of attorney's fees. [Dkt. No. 25-2] at 4.

On February 19, 2018, a pre-complaint interview by telephone took place which reflects that the only basis for the EEO complaint was retaliation. [Dkt. No. 25-1] at 2. The section of the intake form describes the issue as:

> was the aggrieved discriminated against on the basis of reprisal (Prior EEO activity – DA Docket No. ARBELVOIR 2AUG04025 and ARBELVOIR15OCT04279) by Mr. Kevin Rennick, Director, Directorate of Human Resources (DHR) USAG, Fort Belvoir, Va in the following actions when on: (a) or about March 5, 2017, Mr. Rennick issued the aggrieved a performance award of $ 600.00 to DFAS, resulting in loose [sic] of back pay for September, October, November and December of 2016.

Id. at 2. On April 30, 2018, plaintiff's retaliation complaint was dismissed as untimely. [Dkt. No. 1-6] at 1. Plaintiff's counsel filed an appeal brief on May 16, 2018. Id. On August 22, 2018, the EEOC affirmed the dismissal. [Dkt. No. 19] at 5. Plaintiff's counsel filed a Motion for Reconsideration on September 5, 2018 [Dkt. No. 1-11], which was denied on March 5, 2019 [Dkt. No. 1-5]. Plaintiff, acting pro se, timely filed her complaint in federal court.

## II. DISCUSSION

In their Motion to Dismiss, defendants raise two main arguments. First, defendants argue that plaintiff failed to exhaust any claims of discrimination or hostile work environment and that the only exhausted claim, which was for retaliation, is time-barred. Second, defendants argue

under Fed. R. Civ. P. 12(b)(6) that plaintiff's complaint contains only conclusory assertions that do not plausibly allege claims for relief.

A.  **Exhaustion Requirement**

Before filing a lawsuit under Title VII, the Rehabilitation Act, or the ADEA, a plaintiff must exhaust the required administrative remedies. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000); 29 C.F.R. § 1614.103 (complaints of discrimination under Title VII, the ADEA, and Rehabilitation Act are covered by the exhaustion requirement dictated by 29 C.F.R. § 1614). A federal employee who wishes to pursue a Title VII suit must "initiate contact" with an EEO counselor within 45 days of the date of the allegedly discriminatory conduct or the effective date of the applicable personnel action to begin the EEO counseling process. 29 C.F.R. § 1614.105(a). The requirements of administrative exhaustion are "mandatory," although not jurisdictional. Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1851 (2019). Failure to bring a complaint to the attention of an EEO counselor within the period required is generally fatal to bringing a discrimination suit against the federal government. Kirkland v. Mabus, 206 F. Supp. 3d 1073, 1080 (E.D. Va. 2016). Barring the application of the doctrine of equitable tolling, a plaintiff's claim is subject to dismissal when she fails to abide by the applicable filing deadlines. Lamb v. Brennan, No. 1:14-cv-769, 2015 WL 5827638, at *2 (E.D. Va. Oct. 6, 2015).

The only claim plaintiff included in her complaint to the EEO Office was for retaliation. [Dkt. No. 25-2]. That conclusion is fully supported by the prefiling letter her attorney sent to the EEO Office [Dkt. No. 25-2], the memoranda her attorney filed supporting plaintiff's appeal of the Army's dismissal of her complaint [Dkt. No. 1-6] and her motion for reconsideration of that decision [Dkt. No. 1-4], and the EEOC's final decision denying the request for reconsideration [Dkt. No. 1-5]. Therefore, all claims regarding any type of discrimination or hostile work environment must be dismissed for plaintiff's failure to exhaust those claims.

8

As for her only exhausted claim, retaliation, it is time-barred. The EEO Counselor's Report, which is attached to defendants' Reply brief, includes an interview with Rennick in which he stated that plaintiff notified him by email around March 5, 2017, that she had not received a performance award for the last period she worked. [Dkt. No. 25-1] at 4. "She stated she was aware others within the directorate had received a performance award and if she had not, then it was retaliation, please explain or she would file a grievance." Id. Rennick told the EEO investigator that plaintiff's performance award "was submitted like everyone else" and that he had "provided her the source document (SF50) which showed she had received a performance award for the rating period she last worked." Id. He claimed that records would show that plaintiff received her performance award before plaintiff contacted him about the award. [Dkt. No. 25-1] at 4.

Plaintiff argues that she did not learn about her performance award until November 28, 2017. [Dkt. No. 1-6] at 2. That representation conflicts with what Rennick told the EEO investigator, but giving plaintiff the benefit of the doubt, November 28, 2017 will be considered the date on which she became aware of the award and the impact it would have on her back pay. Even using the most generous dates in the record, this claim would still be time-barred because more than 45 days passed between November 28, 2017 and January 26, 2018, when plaintiff had her first informal contact with an EEO counselor.[5]

In trying to avoid the time bar, plaintiff's counsel argued in the administrative appeal a second theory of retaliation which was that Rennick changed the last date of plaintiff's

---

[5] In plaintiff's formal EEO complaint, which she signed on March 26, 2018, she indicates that she first contacted an EEO counselor on January 26, 2018 and named the counselor as Major Bryant. [Dkt. No. 25-2] at 2. Major Bryant is the counselor who conducted the investigation. [Dkt. No. 25-1] at 5.

9

employment from July 2016 to October 2016, thereby causing plaintiff to lose two months of back pay and that plaintiff did not become aware of that conduct until February 14, 2018 when she received notice from OPM that her disability retirement had been approved and she would get back pay effective October 2016. [Dkt. No. 1-4]. That argument fails because it simply recasts plaintiff's claim that Rennick's awarding plaintiff the performance award after she was on LWOP status resulted in her not getting all the back pay she believed she was entitled to receive. This conclusion is supported by the settlement letter her attorney submitted on February 15, 2018, which was sent one day after the OPM notification. [Dkt. No. 25-2]. Nothing in that letter referenced Rennick changing the dates of plaintiff's employment. Id. Instead, it argued that the performance award would cause that date to be changed. Id. Because, by November 28, 2017, plaintiff was fully aware of the effect the performance award could have on her back pay, she had to file her retaliation claim within 45 days of that date and failed to do so.

The only way that plaintiff could avoid losing her time-barred claim is if she could show entitlement to equitable tolling. Plaintiff's counsel did not request equitable tolling of that time period in either the administrative appeal or motion for reconsideration, and plaintiff does not appear to have requested it in her responses to defendant's Motion to Dismiss. Even if plaintiff were trying to rely on equitable tolling, this record does not support applying it. "Equitable tolling has long been considered an extraordinary remedy in this circuit, and litigants face a considerable burden to demonstrate that it applies." CVLR Performance Horses, Inc. v. Wynne, 792 F.3d 469, 476 (4th Cir. 2015). Equitable tolling is primarily based "on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987). Equitable tolling may be applicable where (1) plaintiff was "induced or

tricked by his adversary's misconduct into allowing the filing deadline to pass," or (2) "extraordinary circumstances beyond the plaintiffs' control made it impossible to file the claims on time." Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 321 (4th Cir. 2011) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotations omitted). Plaintiff has not pointed to any conduct by defendants that prevented her from timely contacting an EEO counselor. Although plaintiff is now proceeding pro se, she was previously a GS-12 working in the Human Resources department, had successfully filed two prior EEO complaints, and had counsel throughout the administrative proceedings. The record clearly establishes that she knew about the 45-day time period and yet has provided no basis to suggest entitlement to tolling. Accordingly, equitable tolling does not save her retaliation claim, which must be dismissed as time barred.

**B.   Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

Even if plaintiff's claims had been timely exhausted, defendants correctly argue that the complaint, which lists nearly every possible cause of action available under Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act (ADEA), should be dismissed because it fails to contain sufficient non-conclusory factual assertions that would plausibly allege any claims for relief.

Under Fed. R. Civ. P. 12(b)(6), a complaint "must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). "Therefore, in order for a . . . complaint to survive dismissal for failure to state a claim, the plaintiff must allege facts sufficient to state all of the elements of [his or] her claim." Lucas v. Henrico Cty. Sch. Bd., 822 F. Supp. 2d 589, 600 (E.D. Va. 2011) (internal quotations omitted). "Plaintiffs cannot satisfy this standard with complaints containing labels and conclusions or a formulaic recitation of the elements of a cause of action."

11

Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555) (2007)) (internal quotations omitted). "Instead, [plaintiffs] must allege facts sufficient to . . . stat[e] a claim that is plausible on its face." Id. (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations omitted). In evaluating a motion to dismiss under Rule 12(b)(6), "a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff." Id. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff alleges that she was treated "differently from their [sic] male coworkers, and non-Hispanic coworkers, disabled coworkers," but provides no factual allegations from which to draw a reasonable inference that such treatment was due to her national origin, sex, age, disability, or prior EEO complaints. [Dkt. No. 1] ¶ III(8). For example, plaintiff alleges that "all employees that made any EEO complaint was [sic] referred [sic] as a troublemaker, and any Hispanic employee was referred [sic] as the Hispanic mafia," but does not identify who made these statements or when they were made. Id.

Regarding plaintiff's retaliation claim—which is the only claim that plaintiff raised in her EEO complaint—she states in her brief in opposition to defendants' Motion to Dismiss:

> OPM notified Plaintiff when Disability Retirement was approved that last payroll period date according to Mr. Rennick was October 15, 2016 which is incorrect, that date Plaintiff received around $600 of donation leave two months in [sic] a half later, which does not make common sense to loss [sic] around $6,000 or more to receive $600. It was done in retaliation.

[Dkt. No. 24] at 3. Plaintiff provides no other factual support for her assertion that the award "was done in retaliation." Id. Lastly, plaintiff does not allege any connection between her protected status or prior EEO actions and her employer's alleged harassment other than conclusory statements, which the Court finds insufficient to support claims of discrimination or retaliation. See, e.g., Cole v. Hillside Family of Agencies, Inc., No. 10-3326, 2011 WL 2413928, at *7 (D. Md. June 9, 2011). Accordingly, plaintiff has failed to allege any plausible claims for relief under Rule 12(b)(6).

### C. Plaintiff's Additional Opposition, Motion to Amend, and Motion for Additional Time

In her Additional Opposition, which defendants properly characterize as a Sur-Reply, plaintiff fails to both clarify her claims and refute defendants' Motion to Dismiss. Rather, she presents repetitious and often confusing arguments. In her Motion to Amend, plaintiff did not attach a proposed amended complaint. Instead, she argues and restates many of the same claims she raised in her initial Complaint, and tries to raise new claims under Virginia state statutes regarding whistleblower protection and discrimination in the workplace, as well as a claim for alleged violation of her liberty interests based on purported injury to her reputation.[6] [Dkt. No. 26] at 3, 8-9. These requested amendments would not correct the legal shortcomings of plaintiff's existing complaint or present viable new claims.

Although under Federal Rule of Civil Procedure 15(a), courts "should freely give leave [to amend] when justice so requires," allowing plaintiff to file an amended complaint rife with conclusory allegations would be both futile and not in the interests of justice. As the Fourth

---

[6] Plaintiff also cites "Title 1" in the title of her Motion to Amend, but she does not address it within the body of her motion nor identify to which statute it refers. Accordingly, the Court does not find that it is within the interest of justice to amend the complaint to add claims under "Title 1."

13

Circuit has recognized, "a district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (citations omitted); see also Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) ("[F]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards.")

As in her original complaint, plaintiff's proposed amendment makes conclusory legal statements without alleging any facts in support. Regarding the Virginia state statutes, plaintiff acknowledges that she is reciting the law without alleging any facts, stating "[t]his is for information purpose only, at this moment." [Dkt. No. 26] at 3. Similarly, plaintiff makes only legal conclusions and alleges no facts in support of her claims for violation of her liberty interests. Plaintiff states that "[d]efendants interfered with Plaintiffs [sic] protected liberty interest in her reputation by creating such hostile work environment, retaliation, discrimination, creating a constructive termination, etc." [Dkt. No. 26] at 8. Plaintiff goes on to quote from cases regarding "reputation plus" and "stigma plus" theories, but never alleges any facts supporting her purported liberty claim. [Dkt. No. 26] at 8-9. A plaintiff does not bring a cognizable cause of action by simply listing a legal principle or citing to a statute or caselaw. See, e.g., Coleman v. Maryland Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010), aff'd on other grounds, 566 U.S. 30 (2012) ("Absent [factual] support, [a] complaint's allegations of race discrimination do not rise above speculation.").[7]

---

[7] Many of these claims would also be barred by the settlement agreement she signed on May 18, 2016, in which she waived any and all litigation of past claims. [Dkt. No. 30-1]. Moreover, as defendants point out, plaintiff started disability leave effective May 2016, followed by going on LWOP status, during which time she moved to Puerto Rico. That she was no longer in the Fort

14

The rest of plaintiff's proposed amendments, to the extent the Court can discern what they are, were already pleaded in her original complaint, including discrimination and retaliation based on age, sex, disability (including Post-Traumatic Stress Disorder), and national origin. Plaintiff does not cite to any new facts in support of her claims, but instead repeats conclusory statements such as "Mr. Rennick did not take any action to remediate hostile work environment, retaliation, intimidation nor harassment; he was [a] participant and encouraged it to continue." [Dkt. No. 26] at 9. Because none of the amendments proposed by plaintiff address the legal shortcomings of her existing complaint or present viable new claims under Fed. R. Civ. P. 12(b)(6), the proposed amendments would be futile, and for these reasons the Motion to Amend will be denied. See Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

Finally, the Court does not find good cause for granting plaintiff additional time to find an attorney. As addressed above, defendants' Motion to Dismiss has been fully briefed, and within that briefing the Court has considered two memoranda filed by plaintiff's prior counsel that address the central issue in defendant's Motion to Dismiss. Plaintiff's complaint has been pending since June 3, 2019, which has provided her with ample time to find an attorney. Accordingly, the Motion for Additional Time will be denied.

### III. CONCLUSION

For the above stated reasons, defendants' Motion to Dismiss [Dkt. No. 18] will be granted, all of plaintiff's pending motions [Dkt. Nos. 27, 28, and 37] will be denied, and this civil action will be dismissed with prejudice.

Entered this 12th day of March, 2021.

/s/
Leonie M. Brinkema
United States District Judge

---

Belvoir office undercuts any claim of plaintiff being subjected to workplace harassment or discrimination.

15